RECEIVED
BY
JUL 0 5 2006
ROBERT H. SHEMWELL, CLERK
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT, LOUISIANA

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| REBECCA MARICELLI | CIVIL ACTION NO. 05-1091 |
| versus | JUDGE WALTER |
| COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION | REFERRED TO: MAGISTRATE JUDGE HORNSBY |

## MEMORANDUM RULING

**Introduction**

Rebecca Maricelli ("Plaintiff") applied for benefits based on an allegation that she became disabled on June 6, 2001 due to problems including back, neck, foot and knee pain. She has a high school education and past work experience as a refinery plant laborer and fork-lift operator. Plaintiff was 47 years old when ALJ W. Thomas Bundy denied her claim at step five of the analysis after finding that Plaintiff could perform the full range of sedentary work and applying the Medical-Vocational Guidelines to direct a conclusion of not disabled.

The Appeals Council denied a request for review. Plaintiff then filed this civil action seeking the limited judicial relief that is available pursuant to 42 U.S.C. § 405(g). Both parties filed written consent to have a magistrate judge decide the case and, pursuant to 28 U.S.C. § 636(c) and the standing order of the district court governing social security cases, the case was referred to the undersigned for decision and entry of final judgment. For the

reasons that follow, the Commissioner's decision will be reversed and the case will be remanded to the agency for further proceedings.

**Summary of the ALJ's Decision**

The ALJ analyzed the claim pursuant to the five-step sequential analysis set forth in 20 C.F.R. § 404.1520 (governing claims for disability insurance benefits) and § 416.920 (parallel regulations governing claims for Supplemental Security Income) and described in Barnhart v. Thomas, 124 S.Ct. 376, 379-80 (2003). He found that Plaintiff was not engaged in substantial gainful activity (step one) and had cervical and lumbar disk disease, chondromalacia of both knees, and status post multiple arthroscopic chondroplasty of the right knee, impairments that are severe within the meaning of the regulations (step two) but not severe enough to meet or medically equal a listed impairment (step three).

The ALJ then reviewed much of the medical evidence and testimony. He also considered the effect that Plaintiff's obesity would have on her ability to function. He concluded that Plaintiff had the residual functional capacity ("RFC") to perform the full range of sedentary work. Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers and small tools. A sedentary job involves sitting, but a certain amount of walking and standing is often necessary to carry out job duties. A job is sedentary if walking and standing are required occasionally and other sedentary criteria are met. 20 C.F.R. §§ 404.1567(a) and 416.967(a). Social Security Ruling 83-10 explains that a job involves walking and standing

"occasionally" if those tasks generally total no more than about 2 hours of an 8-hour workday, with the other six or so hours spent sitting. Curry v. Apfel, 209 F.3d 117, 123 (2d Cir. 2000).

The ALJ determined that Plaintiff could not perform her past relevant work (step four) so he turned to whether Plaintiff's RFC and other vocational factors permitted her to perform the demands of other work (step five). Rules 201.21 and 201.28 directed a finding of not disabled.

**Issues on Appeal**

Plaintiff argues that the ALJ erred in finding that Plaintiff did not meet or equal a listing and by improperly disregarding Plaintiff's testimony about her pain and, specifically, her piriformis syndrome.

**Standard of Review; Substantial Evidence**

This court's standard of review is (1) whether substantial evidence of record supports the ALJ's determination, and (2) whether the decision comports with relevant legal standards. Villa v. Sullivan, 895 F.2d 1019, 1021 (5th Cir. 1990). "Substantial evidence is more than a scintilla and less than a preponderance. It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Muse v. Sullivan, 925 F.2d 785, 789 (5th Cir. 1991). A finding of no substantial evidence is justified only if there are no credible evidentiary choices or medical findings which support the ALJ's determination. Johnson v. Bowen, 864 F.2d 340, 343-44 (5th Cir. 1988).

**Analysis**

A central focus of Plaintiff's arguments on appeal is the lack of discussion in the agency decision about Plaintiff's diagnosis of piriformis syndrome. Plaintiff testified that she woke up after a hysterectomy-related surgery with burning in her back so bad that she could not walk. Her physician sent her to physical therapy for several months. Plaintiff said the therapy actually made her feel worse, so she went to see Dr. Ryan Bicknell, Jr., who told her that she had been misdiagnosed. Dr. Bicknell diagnosed piriformis syndrome. Tr. 193-94. He directed physical therapy, but it was an entirely different form of therapy that did not involve walking or sitting for long periods of time. Plaintiff testified that Dr. Bicknell told her the piriformis muscle was torn and causing numbness in Plaintiff's legs. Tr. 194.

Dr. Bicknell's records reflect that he diagnosed piriformis syndrome and related pain in April 2000. Generally available medical information indicates that piriformis syndrome is a rare neuromuscular disorder that occurs when the piriformis muscle, a narrow muscle located in the buttocks, compresses or irritates the sciatic nerve and causes pain, frequently described as tingling or numbness in the buttocks and often down to the leg. The pain may worsen as a result of sitting for a long period of time, climbing stairs, walking or running. The prognosis for most persons is good, and treatments include stretching, massage, anti-inflammatory drugs, cessation of exercise activity, corticosteroid injection and, in some cases, surgery.

The records reflect that Dr. Bicknell prescribed physical therapy, including massage,

during April through June of 2000. Tr. 153-56, 163. Plaintiff returned to Dr. Bicknell for a followup in July 2000 and said she was "doing a little better." Dr. Bicknell administered injections, provided anti-inflammatory medication and directed Plaintiff to continue with piriformis stretches. Tr. 176. Plaintiff visited Dr. Bicknell's office for a follow up in August 2000 and said she was "doing better." Dr. Bicknell noted that his examination showed that "overall symptoms are improving." Dr. Bicknell prescribed medication and directed Plaintiff to continue stretching, minimize sitting and return to the clinic in two months or as needed. Tr. 175.

There are no additional reports from Dr. Bicknell in the record. Plaintiff testified that Dr. Bicknell administered injections "a bunch of times" and then suggested a series of three epidural steroid shots. Plaintiff got no relief after the second shot, so Dr. Bicknell said there was no point in continuing. Tr. 195. The ALJ asked Plaintiff if she continued to see Dr. Bicknell. Plaintiff testified that he was "still one of my doctors" but that she had not been to see him recently. Tr. 196.

Plaintiff was asked about her current symptoms. She said she could not stand for very long because of knee and back problems and could not sit for very long. Tr. 194. Plaintiff said that sitting caused her legs to go numb, especially the left leg. Tr. 200. Plaintiff said that Dr. Bicknell had told her that the torn piriformis muscle was causing the numbness in her legs. Tr. 194.

The ALJ's decision did not mention any of Dr. Bicknell's medical reports or any of

during April through June of 2000. Tr. 153-56, 163. Plaintiff returned to Dr. Bicknell for a followup in July 2000 and said she was "doing a little better." Dr. Bicknell administered injections, provided anti-inflammatory medication and directed Plaintiff to continue with piriformis stretches. Tr. 176. Plaintiff visited Dr. Bicknell's office for a follow up in August 2000 and said she was "doing better." Dr. Bicknell noted that his examination showed that "overall symptoms are improving." Dr. Bicknell prescribed medication and directed Plaintiff to continue stretching, minimize sitting and return to the clinic in two months or as needed. Tr. 175.

There are no additional reports from Dr. Bicknell in the record. Plaintiff testified that Dr. Bicknell administered injections "a bunch of times" and then suggested a series of three epidural steroid shots. Plaintiff got no relief after the second shot, so Dr. Bicknell said there was no point in continuing. Tr. 195. The ALJ asked Plaintiff if she continued to see Dr. Bicknell. Plaintiff testified that he was "still one of my doctors" but that she had not been to see him recently. Tr. 196.

Plaintiff was asked about her current symptoms. She said she could not stand for very long because of knee and back problems and could not sit for very long. Tr. 194. Plaintiff said that sitting caused her legs to go numb, especially the left leg. Tr. 200. Plaintiff said that Dr. Bicknell had told her that the torn piriformis muscle was causing the numbness in her legs. Tr. 194.

The ALJ's decision did not mention any of Dr. Bicknell's medical reports or any of

Plaintiff's testimony about piriformis syndrome. The ALJ did rely upon Dr. Savory's consultative report (Tr. 108-114), which was quite thorough but dismissed Plaintiff's complaints of piriformis syndrome because the condition was not mentioned in the medical records from Dr. Larry Daniels. Dr. Savory apparently did not have access to the records from Dr. Bicknell.

Considering the objective medical evidence that Plaintiff was diagnosed with piriformis syndrome and that it could reasonably be expected to cause symptoms of the kind Plaintiff testified to at the hearing, the court cannot find that the agency's decision as written is supported by substantial evidence. The ALJ may be able to analyze the current evidence or obtain additional evidence regarding the condition to determine whether it has been resolved or continues to cause symptoms and limitations, and the final result may or may not be the same.

A lone reference to a minor potential impairment does not always require an ALJ to inquire further about the issue or specifically address it in his written decision, but when there is an unambiguous objective diagnosis of a condition that is consistent with specific testimony about a serious symptom or limitation, the agency should explore the issue and address it in the written decision. Otherwise, the court is left to decide the issue *de novo*, and that was not Congress's intent when it limited the courts to a substantial evidence review. Absent a reasoned resolution of the piriformis syndrome issues and substantial evidence to support that resolution, the court cannot say that the current decision is supported by

substantial evidence. Reversal and remand pursuant to the fourth sentence of Section 405(g) are in order. A judgment to that effect will be entered.

Plaintiff has also raised on appeal the agency's failure to specifically address whether she meets or equals Listings 1.02 and 1.04. The court has not reached those issues in light of the determination that reversal and remand is required for the reasons set forth above. Plaintiff will be free to press the listings arguments on remand. A specific discussion of those listings in the agency's decision on remand will, if the decision is not favorable, greatly reduce the risk of a second remand.

THUS DONE AND SIGNED at Shreveport, Louisiana, this 30th day of June, 2006.

MARK L. HORNSBY
UNITED STATES MAGISTRATE JUDGE